AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. **23 MR 344** |
| White DODGE DURANGO | ) |
| NM Plate BJJL14 | ) |
| VIN 1C4SDJGJ9JC359977 | ) |

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ New Mexico _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) and 924 (c); 21 U.S.C. § 841(a)(1) and 846 | Felon in possession of a firearm and ammunition, possession of a firearm in furtherance of a drug trafficking crime, and possession with intent to distribute controlled substances and conspiracy thereto |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Rafael Gomez, FBI TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ email and telephone _____ *(specify reliable electronic means)*.

Date: _____ 02/10/2023 _____

_____
*Judge's signature*

City and state:  Albuquerque, New Mexico

Laura Fashing, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

## INTRODUCTION

1.      I, Rafael Gomez, deputized as a Task Force Officer ("TFO") by the Federal Bureau of Investigation ("FBI"), and currently employed with New Mexico State Police ("NMSP") Criminal Investigations Bureau ("IB") as a Sergeant being first duly sworn, make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the vehicle of Edward VALLES, a.k.a. "DOPEY," (VALLEZ) described as a white Dodge Durango bearing New Mexico ("NM") tag BJJL14 (Subject Vehicle). I am requesting a warrant to search the Subject Vehicle for the items listed in Attachment B, which has been attached hereto and incorporated herein by reference.

2.      A more detailed description and photographs of the Subject Vehicle are contained within Attachment A, which has been attached hereto and incorporated herein by reference.

## PURPOSE OF THE AFFIDAVIT

3.      Within the last several months, the FBI's Violent Gang Task Force ("VGTF") has become aware of VALLEZ's status as a Sureños gang member and that he is a source of supply to other gangs in the Albuquerque area. See the below section titled "The Target Subject" for more information regarding a search warrant VGTF agents previously did at VALLEZ's residence.

4.      Based on the facts and information contained herein, I believe the Subject Vehicle contains evidence, fruits, and instrumentalities of violations of:

   a.  21 U.S.C. § 841(a) possession with intent to distribute controlled substance;

   b.  21 U.S.C. § 846 conspiracy to distribute controlled substances;

   c.  18 U.S.C. § 922(g)(1) felon in possession of a firearm or ammunition; and

   d.  18 U.S.C. § 924(c) possession of a firearm in furtherance of a drug trafficking crime (hereinafter referred to as the "target offenses").

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

5.      This affidavit does not set forth all of my knowledge or summarize all of the investigative efforts in this matter; however, the affidavit sets forth only the facts that support probable cause to search the Subject Vehicle as relevant background information. All figures, times, and calculations set forth herein are approximate.

## AFFIANT'S RELEVANT TRAINING AND EXPERIENCE

6.      I am employed as a TFO with the FBI and assigned to the VGTF Squad.  Through VGTF, I have received training regarding too U.S Codes Title 18 and Title 21.   I have also been deputized to serve as a Federal Agent, which allows me to enforce violations to the U.S. Codes Title 18 and Title 21.  I have served as a conduit between Federal U.S. Codes and New Mexico State Statues violations.  Also, as a member of the VGTF, I have participated in the apprehension of FBI fugitives and assisted in other criminal investigations with violations of above U.S. Codes Title 18 and Title 21.   I have been employed with the NMSP IB for approximately 14 years and am currently assigned as a Sergeant.  During my career, I have investigated both violent and non-violent crimes, drug trafficking investigations including but not limited to homicides, physical abuse, and violent crimes related to weapons.

7.      My investigative training and experience includes, but is not limited to, interviewing subjects, targets, and witnesses, writing affidavits for, and executing search and arrest warrants, collecting evidence, conducting surveillance, and analyzing public records. Over the course of my career, I have arrested hundreds of persons for offenses relating to armed robberies, firearm violations, bank robberies, illegal narcotics, and other criminal conduct. I have also been responsible for serving subpoenas and supervising cooperating sources, as well as analyzing phone records.

8.      Through my training and experience, I am familiar with the methods and means

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

used by individuals, drug trafficking organizations ("DTO"s), and gang/criminal enterprises to purchase, transport, store, and distribute controlled substances and firearms. I am also familiar with how those individuals and organizations hide the substantial profits generated from their criminal activities. I am aware that those individuals conceal firearms on their person as well as evidence of their drug trafficking, to include illegal narcotics and large amounts of United States Currency.

9.      I know that firearms are tools of the trade and instrumentalities of the crime of drug trafficking, particularly in instances involving subjects who have committed prior violent crimes and/or firearms violations. It has been my experience that criminals who illegally possess firearms often do not part with such firearms, as it may be difficult for criminals to acquire them. I know that gang members often possess firearms on or near their person, in their vehicles and residences. I know that individuals who are prohibited from possessing firearms know they are not allowed to possess those firearms, therefore they will secrete those firearms within their vehicles, outbuildings, or residences.

10.      It has been my experience that individuals engaged in drug trafficking and gang activities possess firearms to facilitate their illegal activities. I am aware that members of DTO's and gang members often possess firearms to protect the often substantial profits from selling narcotics. Also, I have learned that gang members possess firearms to threaten other individuals and assault other gang members in an effort to establish their gang as powerful and successful.

11.      Based upon my training, experience, and participation in gang/criminal enterprises and DTO's, I am aware individuals engaged in drug trafficking maintain documents, letters and records relating to their illegal activities for long periods of time. This documentary evidence is usually secreted in their place of residence, or the residences of family members, friends, or

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

associates, in their business locations, or in stash houses. This documentary evidence includes telephone numbers, address books, travel receipts, notes referencing aliases or coded names, false identification, money order receipts, money orders, money remittance receipts, pre-paid money cards such as, MoneyPak, Wal-Mart, Green Dot, or other debit cards, bulk U.S currency, money collection logs, such as "tally" sheets, drug load sheets, shipping/mailing receipts, detention facility inmate number lists or addresses for inmates or detention facilities.

12.     I know that members and associates of gang/criminal enterprises and DTOs often make substantial profits from their drug trafficking ventures. Often times, individuals engaged in drug trafficking do not deposit their profits into the bank so as to avoid detention by law enforcement. I know that individuals engaged in drug trafficking often keep large amounts of United States Currency at their residence. Along with United States Currency, I know that members engaged in drug trafficking may purchase expensive jewelry with their drug proceeds to avoid detection. Therefore, I know that members engaged in drug trafficking may have expensive jewelry which is the result of their drug trafficking operations.

13.     Individuals engaged in drug trafficking are weary of law enforcement surveillance as well as other criminals who would steal their drugs or drug trafficking proceeds. Therefore, I know individuals engaged in drug trafficking to use surreptitious and overt video and audio recording devices at their residences, store video and audio recordings in hard drives or other electronic storage devices and have real-time access to video and audio surveillance via applications on their smartphones.

14.     I know that members and associates of gang/criminal enterprises and DTOs have access to numerous cellular phones, often at the same time, in an effort to avoid law enforcement monitoring. I have observed gang members, who are involved in drug trafficking, routinely use

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

pre-paid phones requiring no subscriber information, or fictitious subscriber names, to advance their unlawful activities. These cellular telephones often contain names and phone numbers of other co-conspirators, text messages utilized to further their illicit activities, photographs and videos of gang members, controlled substances, drug proceeds, or firearms. I have observed incarcerated members of gang/criminal enterprises utilize non-gang member's personal identification number when making prison/jail telephone calls to mask their conversations and decrease the likelihood institutional gang investigators will monitor the call. Members of gang/criminal enterprises and DTOs often use the same strategy to mask their ownership of vehicles, real property, and utility services, in an effort to avoid detection by law enforcement. I am aware NMCD and BOP inmates are able to utilize email services while incarcerated and believe those services are widely used by the inmates.

15.     In addition, I am also familiar with the use of text messaging, instant messaging, social media, and other messaging applications, used by gang/criminal enterprises and DTOs to advance their unlawful activities.

16.     I have learned individuals involved in the distribution of controlled substances often conceal evidence of their drug trafficking activities on their person or in their residences and businesses, or the residences of friends or relatives, and in surrounding areas to which they have ready access, such as garages, carports, and outbuildings. They also conceal evidence in vehicles, including vehicles outside of their residences, so that they have ready access to it and so that they can hide it from law enforcement officers executing search warrants at their residences or businesses. Such evidence includes controlled substances, packaging materials such as baggies, rubber bands, shrink wrap, heat sealers, and drug presses, other drug use and trafficking paraphernalia such as pipes and scales.

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

17.    It has been my experience members of gang/criminal enterprises and DTOs often maintain records of their transactions in a similar manner to the record keeping procedures of legitimate businesses. Even after the drugs are sold, documentary records often remain for long periods of time, even years, to memorialize past transactions, especially when debts remain open. I have located notes documenting the status of accounts receivable and accounts payable, and the names and phone numbers of suppliers, customers, and co-conspirators, and other associates who have assisted drug traffickers in other ways, such as helping with the cleansing of otherwise "dirty" money. I am aware such proceeds may be made to appear "clean" through a variety of means, including investments into legitimate enterprises and structuring deposits of large amounts of U.S. Currency into financial institutions in such a way so as to avoid the detection by law enforcement, as well as reporting requirements of banking institutions. These records can be maintained on paper, in the form of business and personal ledgers and diaries, calendars, memoranda, pay-owe sheets, drug ledgers, IOUs, miscellaneous notes, money orders, customer lists, and phone address books, in either hard copy or electronic form. I have personally been involved in search warrants which resulted in the discovery of such records that were more than a year old.

18.    I have learned individuals involved in gang/criminal enterprises and DTOs possess items of identification, including but not limited to, driver's licenses, rent receipts, bills, and address books. These items may be relevant to the identity of those involved in the criminal enterprise, the possessor of the items seized, and occupants of the premises searched.

## BIOMETRIC ACCESS TO DEVICES

19.    Based on my experience, I am aware gang/criminal enterprises and drug traffickers utilize cellular telephones to exchange information, photographs, and felonious communications, to include the names and locations of informants, witnesses, victims. I have also observed gang

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

members discuss the acquisition and distribution of firearms to and from other members, as well as discussions about gang related assaults.

20.     I know from my training and experience investigating criminal gangs and drug trafficking organizations that cellular telephones contain evidence of criminal conduct. More specifically, it has been my experience that cellular telephones are utilized to communicate drug prices, availability, quantity, and the contact information for customers and suppliers. I have also discovered photographs of controlled substances and firearms on cell phones.

21.     I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners, facial recognition features and iris recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

a.  If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

b.  If a device is equipped with a facial-recognition feature, a user may enable the ability

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

to unlock the device through his or her face. For example, this feature is available on certain Android devices and is called "Trusted Face." During the Trusted Face registration process, the user holds the device in front of his or her face. The device's front-facing camera then analyzes, and records data based on the user's facial characteristics. The device can then be unlocked if the front-facing camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Trusted Face.

c. If a device is equipped with an iris-recognition feature, a user may enable the ability to unlock the device with his or her irises. For example, on certain Microsoft devices, this feature is called "Windows Hello." During the Windows Hello registration, a user registers his or her irises by holding the device in front of his or her face. The device then directs an infrared light toward the user's face and activates an infrared-sensitive camera to record data based on patterns within the user's irises. The device can then be unlocked if the infrared-sensitive camera detects the registered irises. Iris-recognition features found on devices produced by other manufacturers have different names but operate similarly to Windows Hello.

d. In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

concern about securing the device.

e.   As discussed in this Affidavit, I have reason to believe that one or more digital devices will be found during the search. The passcode or password that would unlock the devices subject to search under this warrant currently is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the devices, making the use of biometric features necessary to the execution of the search authorized by this warrant.

f.   I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when: (1) more than 48 hours has elapsed since the device was last unlocked; or, (2) when the device has not been unlocked using a fingerprint for 8 hours *and* the passcode or password has not been entered in the last 6 days. Similarly, certain Android devices cannot be unlocked with Trusted Face if the device has remained inactive for four hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

g.   Due to the foregoing, if law enforcement personnel encounter any devices that are subject to seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, I request permission to: (1) press or swipe the

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

fingers (including thumbs) of the Target Subjects to the fingerprint scanner of the devices found at the Subject vehicle; (2) hold the devices found at the Subject vehicle in front of the face of Target Subjects and activate the facial recognition feature; and/or (3) hold the devices found at the Subject vehicle in front of the face of Target Subjects and activate the iris recognition feature, for the purpose of attempting to unlock the devices in order to search the contents as authorized by this warrant. The proposed warrant does not authorize law enforcement to request that Target Subjects state or otherwise provide the password or any other means that may be used to unlock or access the devices. Moreover, the proposed warrant does not authorize law enforcement to ask Target Subjects to identify the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

**THE TARGET SUBJECT**

22.     I have reviewed VALLEZ's criminal history, I am aware that he has been arrested 27 times in New Mexico and has been convicted of the following felony offenses aggravated burglary with a deadly weapon (x4), aggravated fleeing a law enforcement officer (x4), aggravated assault with a deadly weapon, cruelty to animals, being a convicted felon in possession of a firearm, and trafficking a controlled substance (x4). VALLEZ is a Sureños gang member and currently on probation through New Mexico Corrections Department ("NMCD"). By way of background, on September 1, 2022, VGTF agents executed 15 search warrants as part of a Violent Crime in Aid of Racketeering and drug distribution investigation. One of those 15 locations was the residence of VALLEZ, case number 22MR1261, wherein agents seized marijuana and NMCD subsequently issued an arrest warrant for a probation violation for VALLEZ. As a result of the 15

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

search warrants agents seized approximately $1.8 million dollars, more than 35 firearms, approximately 142 pounds of methamphetamine, ammunition, ballistic vests, and other items.

23.     At the time of the police pursuit referenced below, VALLEZ was still wanted on the outstanding probation violation warrant.

## **PROBABLE CAUSE**

24.     On February 9th, 2023, at approximately 10:59 pm, a NMSP patrol officer was patrolling within the City of Albuquerque, when the officer observed a white in color Dodge Durango Sport Utility vehicle bearing a NM tag BJJL14 (Subject Vehicle). Officers later learned that the Subject Vehicle was registered to VALLEZ.

25.     The Subject Vehicle was traveling on Interstate 25 at a speed of approximately one hundred and twenty-five (125) miles per hour.  As the officer engaged his emergency equipment, the Subject Vehicle accelerated and fled the traffic stop at high speed traveling westbound on Avenida Cesar Chavez.  Due to erratic and dangerous driving behaviors the officer deactivated his emergency equipment, slowed down to posted speed and began traveling west bound on Avenida Cesar Chavez, in the same direction as the Subject Vehicle.  As the officer approached the intersection of Bridge Boulevard SW, (Avenida Cesar Chavez) near La Vega Drive SW, he observed debris shattered through both westbound and eastbound lanes of Bridge Blvd SW and damage to a cinderblock wall. The officer also observed the Subject Vehicle with heavy damage; it was apparent that the Subject Vehicle had crashed.

26.     The officer exited his patrol unit, and was informed by a civilian that the civilian had detained one of the male occupants of the vehicle. The officer identified the male subject as being Jonathan ACUNA, (born in 2000). ACUNA had fled the scene of the crash and the civilian held him at gunpoint until police arrived. ACUNA was then detained by officers and placed in the

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

rear seat of a marked NMSP unit. ACUNA stated that he was concerned that the driver of the vehicle was still inside of the vehicle.

27.    Other officers arrived and set a perimeter around the scene of the crash. At approximately 11:14 pm, officers located VALLEZ on Airway Road SW and Cannon Road SW which was approximately 0.3 miles from the crash scene. It is important to note that from the time the traffic stop was initiated until the apprehension of VALLEZ only approximately 15 minutes had passed. VALLEZ was transported back to the scene. Officers observed multiple scratches on the top of VALLEZ's head, the scratches are consisted with a person being involved in a vehicle crash.  An officer also observed VALLEZ to display signs of impairment by having bloodshot and watery eyes, his speech was slurred, and the officer detected the strong odor of an alcoholic beverage emitting from VALLEZ breath/person.

28.    During a tow inventory of the vehicle, several bags were located within the rear compartment of the Subject Vehicle. One of the bags was inspected and contained a at least several thousand small round blue pills which were stamped with the number "30" on one side, and the other side of the pill stamped with the letter "M", suspected to contain fentanyl[1]. VGTF agents have previously seized hundreds of thousands of blue "M-30" pills which were tested and contained fentanyl. Officers also located bags that contained multiple stacks of U.S. Currency, and observed approximately 4 cellphones inside the vehicle.

29.    VALLEZ and ACUNA were arrested and transported to the Metropolitan Detention Center. The Subject Vehicle was sealed and towed to the secured NMSP garage for safe keeping pending a search warrant.

30.    Upon executing this search warrant, agents expect to locate four cell phones inside

_____

[1] A tow inventory search photograph of the opened duffel bag has been attached hereto as Attachment 1.

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

the Subject Vehicle. If locked, agents will then take those phones to be unlocked by utilizing

biometric features on VALLEZ and ACUNA, who are currently at MDC.

## **CONCLUSION**

31.     Based on the information contained herein, I submit probable cause exists to search

the Subject Vehicle, more fully described in Attachment A, for the items described in Attachment

B, which are evidence, fruits, and/or instrumentalities of, or property intended for use in

committing the target offenses. This affidavit was reviewed by Assistant United States Paul

Mysliwiec.

Respectfully submitted,

Rafael Gomez
FBI Task Force Officer

Subscribed electronically and sworn telephonically on February 10, 2023.

HONORABLE LAURA FASHING
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF NEW MEXICO

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

Attachment 1:



**ATTACHMENT A**
**Item to be Searched**

Item to be search is a white in color Dodge Durango sport utility vehicle, bearing NM tag BJJL14, with

vehicle identification number (VIN) 1C4SDJGJ9JC359977 (Subject Vehicle). The Subject Vehicle is

registered to Edward E. VALLEZ, aka: "DOPEY."

Color photographs are attached below.

 



Biometric Access to Devices: During the execution of the search of the premises described herein, law

enforcement officers are also specifically authorized to compel **Edward VALLEZ and Jonathan**

**ACUNA** to provide biometric features, including pressing fingers (including thumbs) against and/or

putting a face before the sensor, or any other security feature requiring biometric recognition, of:

**ATTACHMENT A**
**Item to be Searched**

1. Any devices found in the Subject Vehicle, and

2. Where the devices are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments for the purpose of attempting to unlock the devices' security features in order to search the contents as authorized by this warrant.

3. This warrant does not authorize law enforcement personnel to compel any other individuals found at the premises to provide biometric features, as described in the preceding paragraph, to access or otherwise unlock any device. Further, this warrant does not authorize law enforcement personnel to request that the Subject state or otherwise provide the password or any other means that may be used to unlock or access another person's device(s), including by identifying the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

**ATTACHMENT B**
**Property to be Seized**

The property to be seized includes all evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846 - possession with intent to distribute controlled substances and conspiracy to distribute controlled substances,  18 U.S.C. §§ 922(g)(1) and 924 - possession of a firearm and ammunition by a convicted felon; and 18 U.S.C. § 924(c) - possession of a firearm in furtherance of a drug trafficking crime to include;

1. Firearms, magazines, and ammunition;

2. Controlled substances, drug packaging materials, and paraphernalia;

3. Documents, notes, or writings detailing other individuals involved in the distribution of controlled substances;

4. Large amounts of United States Currency;

5. Cellular telephones;

6. Safes and lock boxes; and

7. Articles of property tending to establish the identity of persons in control of premises, vehicles, storage areas, and containers being searched, including utility company receipts, rent receipts, addressed envelopes, and keys.